## Case No. 17,690.

### The WM. CUMMINGS.

[27 Leg. Int. 116; [1] 7 Phila. 598.]

District Court, E. D. Pennsylvania. 1870.

WAGES OF SEAMEN—PARTIAL FORFEITURE—INSUBORDINATION AND MUTINY — DISCHARGE BY CONSUL—LOSS OF VOYAGE.

1. Seamen, having received two months wages in advance, mutinied, with a concerted purpose to intimidate the officers of the vessel, and obtain a discharge without going to sea. The revolt having been quelled by the prompt use of severe measures of repression and punishment, the crew was retained for the outward voyage. As they were sufficiently punished for this misconduct, their wages for the outward voyage were not forfeited.

2. The measures of repression and punishment, whether unduly severe or not, were not considered as part of the general treatment of the crew, on the question whether they had been used so cruelly on the outward voyage as to entitle them to a discharge at the first port of arrival.

3. This was a port where another crew could not be obtained, and the master had neither funds nor credit, and the climate was unhealthy. The crew having refused to perform any duty, and having, through concerted misrepresentation, procured their discharge by the consul at this port, were, after a long delay, re-shipped in the same vessel. The intended voyage having been abandoned, they came back in her to her home port. They were not allowed wages for

---

[1] [Reprinted from 27 Leg. Int. 116, by permission.]

the time of her detention at the foreign port while they were out of her service.

4. But as the master did not appear to have made proper efforts to get to her next port of destination, where funds would have been at command, and a new crew easily obtainable, wages for the homeward, as well as the outward voyage, were decreed, without set-off or abatement by reason of the detention abroad.

Libel of mariners for wages, for a voyage, which was, according to the articles, to have been from the United States to St. Paul de Loando, in Africa, (a Portuguese colonial settlement,) and thence to Bahia, and further, to return in twelve months. The vessel made the voyage to Loando in eighty-two days. Through difficulties, which will be mentioned below, the crew left her at Loando, with the sanction of the consul. She was detained there six months; and the intended voyage having been abandoned, and the crew reshipped in her, she returned to the United States, the homeward voyage occupying fifty-one days. The libellants were thus on board, in all, about four and a half months. They demanded wages for this time, and for the longer period of the detention at Loando, which, they alleged, was wrongful. The owners of the vessel denied that the libellants were entitled to any amount whatever.

Mr. Cochran, for libellants.
Mr. Coulston, for respondents.

CADWALADER, District Judge (orally). We have, in this case, an example of the ill effects of the culpable inattention to the selecting and shipment of a crew, which, though now almost habitual in the United States, cannot be the less inexcusable in owners and masters of vessels. This vessel was thus unseaworthy for a time at least, through the incompetency and insubordination of the libellants and others on board. This negligence, in the shipment of a crew, does not excuse the misconduct of the crew shipped. The difficulties which occurred may probably have been increased by the fact that the first mate was the master's brother. He was probably more independent than he should have been of the master's authority. I have little doubt, from the evidence, that the second mate was, from the time of the shipment of the crew, engaged in organizing a conspiracy to subvert the discipline of the vessel, or at least in promoting a mutinous feeling, which, in part through his incitement, broke out in the Delaware before getting to sea, and was again manifested in Loando. But whether my impressions, in these respects, of the causes of what occurred, are correct or not, is of little importance to the decision of the case upon what actually occurred.

The whole crew having, at the time of shipment, received an advance of two months' wages, the libellants and others made a concerted effort, in the Delaware, so to disturb the police of the vessel as to intimi-date the master and obtain their discharge from her. Their conspiracy and mutiny, for this purpose, which are clearly proved, would have been successful, if energetic measures of suppression had not been adopted. By the prompt use of such measures, the revolt was quelled, and the vessel enabled to get to sea with this crew. Whether the severity may not have been greater than was absolutely necessary, and whether the methods of coercion used were in all respects proper, are questions which need not be decided. The men appear to have been sufficiently punished for their misconduct at the outset of this unfortunate voyage. Whether the measures then used for the repression of the mutiny were blamable or not, they should not be considered as part of any treatment which can be complained of as cruelty during the voyage. The two questions of alleged severity in quelling a mutiny, and alleged cruel treatment at other times, are, in a great measure, if not altogether, distinct.

Though these men composed a bad crew, during the rest of the outward voyage, and though some of them were of inferior capacity, I do not see that such acts of subsequent positive misconduct on their part occurred before arrival at Loando as to forfeit their wages for the outward voyage. That they formed a combination during this voyage to obtain their discharge at Loando, and that the statements by which they succeeded in obtaining it were preconcerted, and were, in a great measure untrue, I have little if any doubt. But I do not see that there was any purpose on their part of obtaining a discharge otherwise than through consular sanction; and if they had afterwards told the truth to the consul at Loando, such a previous concert of action would not have been objectionable. I think that the machinations of the second mate were secretly continued, more or less, throughout the voyage, and that the resentment and ill humor of the crew were probably kept up through occasional acts of undue severity on the part of the first mate. These acts, though doubtless greatly exaggerated, and somewhat distorted, in the testimony, were, I think, arbitrary, hasty, and harsh, to say the least; and if the captain did not occasionally err in like manner, he does not appear to have exercised proper supervision over this mate. There is, however, I am sorry to believe, a great deal of falsehood in the testimony of the crew; and, from what I may have occasion to say hereafter, it is possible that my present view of this part of the case may be more unfavorable to the master than it should be.

At Loando the sickly season was begun or approaching: there were no facilities for getting another crew; the captain was without funds, and had neither means nor credit to obtain them there in cash. If it had been a place where a new crew could have been shipped, the incompatibility of a proper fu-

ture state of discipline on board, with very probable future consequences of past and existing relations between the officers and crew, may have been such as to have required, or justified, the discharge of the crew. This might have been so, independently of what might otherwise have been deemed the merits of their controversy with the master. But as the difficulties of obtaining a new crew at Loando were insuperable, necessity, which has its own law, required that the vessel should in some way be enabled to reach Bahia. At Bahia a crew could have been obtained without difficulty; and there the master, whether he had a letter of credit or not, could have obtained ample funds upon the rich freight which he deposes could have been engaged.

At Loando the crew absolutely refused to do any duty until the case should be investigated by the consul; and it was accordingly investigated by him upon their complaint. He seems to have disregarded in a great measure, while they took the fullest advantage of, the local difficulties which have been mentioned. I do not doubt that he acted with a conscientious desire to perform his duty, according to his conception of it. But the proceeding before him seems to have been rather an ex-parte inquisition than a hearing of a case referred by parties to his arbitrament. The witnesses do not appear to have been confronted with the master, and no sufficient opportunity for putting questions to them appears to have been given to him. I do not think that he properly insisted upon having such an opportunity. But I think that the consul should, for the sake of justice, have seen that it was afforded.

Upon a comparison of the depositions of the crew before him, with their subsequent examination here, the contradictions are so numerous, and so material, that it is now difficult, if not impossible, to credit their testimony on any precise points. But it appears to have been implicitly believed by the consul without the slightest qualification. It is true that he received afterwards in like manner the ex-parte statements of the master and of the first mate. I do not impute partiality to the consul, but the manner in which he made this investigation was such as might prejudice unjustly his mind. In these litigations, the difficulty of ascertaining the truth of what has occurred on ship-board, is almost always very great. Sometimes it is to be surmounted only through extended cross-examination, especially where the testimony of examinants has been preconcerted, as, unfortunately, is too often the case.

The consul, as I have already intimated, appears not to have been aware of any such difficulty. His decision sustains the crew in every respect, so far as the opinion of a consular officer abroad can ever be decisive. If this had been a consular award under an ordinary arbitrament in a controversy between

a master and his crew, I would have been very unwilling to question the decision, though, of course, it would not have been absolutely conclusive. On October 7th, 1867, the consul announced his decision. It was that the crew, twelve in number, should be discharged for what he thought barbarous treatment on the outward voyage, especially in the river Delaware, and that they should receive full wages, and additional wages for three months, according to his view of the act of congress. He gave notice to the captain-general not to let the vessel leave without previous payment by the master of the wages, &c., and the consular charges. The captain-general gave orders accordingly to detain the vessel. There is no evidence that the master made any application to the captain-general, or to any of the local authorities, for a revision, reconsideration, or qualification of this order. I cannot adopt the consul's opinion of the rights of the crew to any thing like the extent to which he went, nor can I approve of his disregard of the embarrassments in which the vessel was placed. On the other hand, I do not agree with the respondents' counsel that the master of the vessel, by adopting proper measures, would, after the consul's award, have had any insuperable difficulty in getting the vessel to Bahia.

The consul on the 18th of November wrote to the master in these words: "When you have complied with my demands, I could undoubtedly procure from the Portuguese corvette men enough to take your ship to Bahia." This offer the master did not accept for the reason as alleged, that he had no funds at Loando to enable him to meet the consul's demand. I have already expressed my belief, that no such funds were obtainable there. But I repeat that I also believe there would have been no difficulty whatever in getting them at Bahia. The master offered to the consul a draft on the owners at Philadelphia, which offer was not accepted; nor should it have been, if the money was rightly demandable, because the more proper place of payment was Bahia. Subsequently the consul proposed to defer the payment, certainly of a part of the amount, until the return of the vessel to the United States, and until a decision here upon the merits of the controversy. I am not quite certain that this is not too narrow a view of the import or tendency of his offer. At all events, I have little doubt that if the master of the vessel had responded to the overture in any spirit of concession, an arrangement could have been made for thus deferring payment of the whole amount, if he had proposed it. However this may have been, the proper course, in order to get his vessel away, was to arrange matters (under protest of course) for payment at Bahia. This he does not appear to have suggested or even thought of. The consequence of all these unfortunate acts and omissions,

and of others, was the loss of the intended voyage, through a delay at Loando till 25th of March, when the crew, having been reinforced by a detachment from the United States ship of war Swatara, were again shipped in the Cummings, which vessel returned to her home port. The outward voyage occupied eighty-two days, the homeward fifty-one days. The men were thus in the actual service of the vessel for about four and a half months. They earned wages to be credited or paid to them for this period, less the advance of two months wages. For the three months 'wages under the act of congress, awarded by the consul, no demand is, or could be, made.

The controversy is twofold; first, as to wages for the time of detention at Loando; secondly, as to the liability of the crew for a set-off in damages for an alleged loss of freight on the intended voyage which was broken up. On the first question I consider the crew to have been out of the service of the vessel from the time, in September, when they refused to perform duty at Loando, and when laborers from the shore were employed to unlade her, to the time of reshipment in March. This reshipment of the crew, I consider. in view of the peculiar circumstances of this extraordinary case. to have been made, in effect, under a new contract. I think that the false statements of these men to the consul were the principal cause of the difficulties which occurred. In adopting an opinion different from his, I do not think them entitled to any wages which they did not earn on board. Secondly; I disallow the demand against them for the loss of the freight which would have been obtainable at Bahia for the ulterior voyage, originally intended. and for the loss from detention of the vessel at Loando. I have already said that however they may have been in fault. their misconduct did not render it in fact impossible for the vessel to reach Bahia; and though their misconduct may have caused some unavoidable delay of the vessel. mariners are not treated on questions of demurrage as parties to a contract of affreightment.

My decision against the mariners on other points makes their case perhaps one of some hardship. I will not increase it in the manner suggested. How far the decision of the consul, though it might be subject to revision here. furnished in fact, if not of right. the provisional or temporary rule of conduct for all parties at Loando. it is not necessary to decide. I think the case one for full costs, however small the amounts awarded in proportion to those demanded. A balance of $62.50 with interest. is due to each of the libellants, except those with whom a settlement has been made since the commencement of the proceedings. Decree accordingly, with costs.